**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 8, 2014[*]
Decided April 9, 2014

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-3016

| | |
|---|---|
| JIMMY E. THOMPSON, | Appeal from the United States District |
| *Plaintiff–Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 13-617-GPM |
| | |
| SALVADOR A. GODINEZ, *et al.*, | G. Patrick Murphy, |
| *Defendants–Appellees*. | *Judge.* |

### O R D E R

Jimmy Thompson, a prisoner at Lawrence Correctional Center in Illinois, claims in this action under 42 U.S.C. § 1983 that medical staff violated the Eighth Amendment by ignoring his chronic back pain and a fatty tumor on his forehead. Thompson also named as defendants a number of grievance officers and other administrators who, he

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that the case is appropriate for summary disposition. *See* FED. R. APP. P. 34(a)(2)(C).

says, should have involved themselves in the medical staff's treatment decisions. At screening the district court dismissed the suit on the ground that Thompson's complaint fails to state a claim. *See* 28 U.S.C. § 1915A(b)(1). We agree with the district court that Thompson has not stated a claim of deliberate indifference against any member of the medical staff, and for that reason neither could the other defendants be liable for not intervening in his medical care. For purposes of this appeal, we accept as true Thompson's allegations about the medical staff as supplemented by his attached medical records. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012); *Thompson v. Ill. Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

Thompson's back pain predated his incarceration at Lawrence, but the pain worsened in August 2011 after another inmate picked him up and "slammed" him on his back in the concrete prison yard. Thompson immediately was taken to the infirmary but was sent back to his cell without treatment. Later that day his back and hip began to hurt, but the guard on duty ignored his requests to be seen by a nurse. The next day Thompson told the nurse who delivered his psychiatric medication that he was in pain, but she did not take him to the infirmary.

Five days after the incident, on August 31, Thompson saw a nurse in his unit who gave him 30 regular-strength Tylenol pills for his pain. Then in September an unnamed nurse twice gave him 30 pills of ibuprofen. An X-ray taken on September 8 revealed degenerative changes in Thompson's spine but no fracture. At the end of September, a nurse offered him more Ibuprofen, but Thompson declined and told her it was ineffective and asked for stronger pills.

In October 2011, Thompson saw Mary Hardy, a nurse practitioner, and Dr. Phillip Martin, the healthcare administrator at Lawrence. Hardy explained the results of the X-ray and taught Thompson several exercises to help alleviate his back pain. Then in February 2012, Thompson saw Dr. James Fenoglio, another physician at the prison infirmary, who ordered a second X-ray. That X-ray showed mild scoliosis and degenerative changes. At Thompson's follow-up visit later that same month, Dr. Fenoglio prescribed a 90-day supply of 500 mg naproxen, a pain-reliever. The physician also prescribed physical therapy, which Thompson completed in April. At Thompson's next appointment in September 2012 (and his last with Dr. Fenoglio), the physician changed Thompson's prescription to a 90-day supply of Ultram, a brand of opiod pain-reliever used to treat moderate to severe pain. *See Tramodol*, NATIONAL LIBRARY OF MEDICINE, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012486/ ?report=details (last visited Mar. 27, 2014).

Thompson's treatment continued with other prison physicians. In October 2012 he requested for his back either a brace, special shoes, or some type of wrap, but Dr. Matticks declined to order any of these. Thompson continued to consult with a physical therapist, who instructed him on exercises to help his back. Thompson saw Dr. Vipin Shah in December 2012, though, by Thompson's account, this examination was limited to the doctor asking him to lift his legs one at a time and to bend at the waist. In April 2013, Thompson says, Nurse Hardy told him she would not see him because he had been treated by another doctor two weeks previously. Then in May 2013 an unnamed physician ordered a third X-ray, which showed degenerative disc disease.

Thompson has named as defendants Nurse Hardy and Drs. Martin, Fenoglio, Matticks, and Shah. Yet in his detailed complaint, which he submitted in June 2013, Thompson also recounts seeing at least four other physicians and receiving ibuprofen and refills of Ultram through the first months of 2013. In his complaint Thompson acknowledges improvement but alleges that he still has chronic back pain.

Except for Dr. Shah, all of the defendants also saw Thompson about a lipoma on his forehead. A lipoma is a benign, fatty tumor, STEDMAN'S MEDICAL DICTIONARY 1107 (28th ed. 2006), which usually is diagnosed through physical examination and requires no treatment. *Lipomas*, CLEVELAND CLINIC, http://my.clevelandclinic.org/disorders/ lipomas/hic_lipomas.aspx (last visited Mar. 19, 2014). Thompson's lipoma developed in 2003, before his incarceration at Lawrence. Thompson believes that it causes him to become "faintish and dizzy," but the defendants have told him repeatedly that there is no medical reason to remove it.

The district court concluded that Thompson's complaint fails to state a claim of deliberate indifference to a serious medical need. *See* 28 U.S.C. § 1915A(b)(1). The court reasoned that Thompson's allegations suggest nothing more than disagreement with the defendants' exercise of medical judgment and thus negate an essential element of that claim. On appeal Thompson focuses on his back pain and counters that the court overlooked "days and months" when he did not receive treatment for back pain despite his complaints. He points to his allegation that for three weeks in February 2012 between his appointments with Dr. Fenoglio he received no medication. Also, Thompson says in his complaint, he was never told that the naproxen prescribed by Dr. Fenoglio that month was for 90 days. Thus, he says, he went without pain medication from May 22 (when the supply ran out) until his next appointment with Dr. Fenoglio on September 4, 2012. In his appellate brief Thompson also explains that

after he filed his complaint (and shortly after the third X-ray was taken), a new physician at Lawrence prescribed him twice-daily pain medication and a brace.

To prove that he has been denied medical care in violation of the Eighth Amendment, Thompson would have to establish that a defendant knew about but disregarded a substantial risk of harm from an objectively serious medical condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Vance v. Rumsfeld*, 701 F.3d 193, 204 (7th Cir. 2012); *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). Deliberate indifference is conduct that is intentional or reckless and not simply negligent. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). A plaintiff may plead himself out of court by revealing in his complaint facts that defeat his claim, *see Edwards*, 478 F.3d at 830; *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003), although not every acknowledgment of having received some medical care will defeat a claim of deliberate indifference, *see Edwards*, 478 F.3d at 831; *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). The district court essentially concluded that Thompson pleaded himself out of court concerning both his back pain and lipoma, and we agree.

Like the district court, we assume that Thompson's back pain is a serious medical condition, but his detailed complaint confirms that the defendants were attentive, not indifferent, to that ailment. The defendants, and many other medical providers at Lawrence, evaluated him repeatedly, sent him for X-rays and physical therapy, and prescribed and adjusted the dosage of different drugs when he complained that some were not effective. And although Thompson alleges that there were lapses in his prescriptions for pain medication, he does not attribute this lack of treatment to any of the named defendants or even hint that one or more of the defendants knew that he needed a resupply of medication.

Thompson's complaint makes apparent that he was not satisfied with the care he received largely because, on his view, appropriate treatment must include a "steady flow" of pain medication, a brace, or at least special shoes. But that disagreement with the defendants could not establish deliberate indifference. *See Budd v. Motley*, 711 F.3d 840, 844 (7th Cir. 2013) (upholding dismissal at screening of prisoner's claim of deliberate indifference to leg wound since complaint detailed extensive medical care, including testing, medication, and multiple hospital visits over period of several weeks); *Ciarpaglini*, 352 F.3d at 329–31 (upholding dismissal at screening of inmate's claim that prison physicians had denied him medical care by discontinuing medications for ADHD and panic disorder, since inmate acknowledged frequent visits with his doctors and thus alleged only a disagreement with their treatment decisions); *Gutierrez*

*v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (upholding dismissal on complaint of inmate's claim of deliberate indifference to painful cyst, since claim was "fatally undermined by his own factual allegations" of repeated treatment over ten months). We conclude that the district court correctly dismissed Thompson's claim of deliberate indifference to his back pain.

Thompson's claim about his lipoma is even weaker. His medical records show that the lipoma first appeared in 2003, before he was incarcerated at Lawrence. Since his arrival at the prison in 2007, these defendants and other physicians periodically have measured and evaluated the lipoma; each time the conclusion was that removal is not medically necessary. Moreover, a December 2012 progress note (written by a physician who is not a defendant) explains that Thompson decided to cease treatment after being told that, despite his belief that the lipoma causes dizziness, the condition actually is benign. These details negate Thompson's claim that doctors disregarded a substantial risk of harm from the lipoma, which cannot be called a serious medical condition. *See Holloway*, 700 F.3d at 1072; *Edwards*, 478 F.3d at 831.

We have reviewed the remainder of Thompson's arguments, and none has merit. Accordingly, we AFFIRM the judgment dismissing Thompson's complaint. Thompson incurred one "strike" for filing his complaint and a second for pursuing this appeal. *See* 28 U.S.C. § 1915(g); *Robinson v. Sherrod*, 631 F.3d 839, 843 (7th Cir. 2011).