NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

Submitted January 17, 2014[*]

Decided January 27, 2014

Before

RICHARD D. CUDAHY, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

| | |
|---|---|
| No. 13-3107 | Appeal from the United States District Court for the Western District of Wisconsin. |
| OSCAR GARNER, *Plaintiff-Appellant*, | |
| *v.* | No. 11-cv-829-slc |
| PAUL SUMNICHT, *et al.*, *Defendants-Appellees*. | Stephen L. Crocker, *Magistrate Judge*. |

**Order**

Oscar Garner, a Wisconsin prisoner who claims to be mentally ill, contends in this suit under 42 U.S.C. §1983 that a prison physician and other defendants violated the Constitution by subjecting him to cruel and unusual punishment. He suffers from lactose intolerance and has symptoms similar to irritable bowel syndrome. He regularly sought treatment. For more than four years the prison's medical staff refused to give him a lactose-free diet and often declined to provide lactase supplements or other medi-

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

cine. Instead it told him to be careful when choosing foods from the prison's regular menu, and when his weight dropped unduly it furnished a daily bag of high-calorie foods (some of them also high in lactose) to replace what he missed by declining lactose-containing foods on the prison's regular diet. Garner maintains that this approach, emphasizing self-discipline (and dependent on a prisoner's ability to learn and remember which foods he can tolerate and which he can't), has not worked, and that his condition is painful and has caused him diarrhea, vomiting, vitamin deficiency, and severe weight loss. The prison's approach is so obviously bad, Garner maintains, that it violates the eighth amendment under the approach taken in *Farmer v. Brennan*, 511 U.S. 825 (1994), and *Estelle v. Gamble*, 429 U.S. 97 (1976).

The district court granted summary judgment for the defendants. 2013 U.S. Dist. LEXIS 127112 (W.D. Wis. Sept. 6, 2013). The court concluded that because the prison's medical staff regularly listened to Garner and did *something* about his condition, the problem is at most medical malpractice, which *Farmer* holds does not violate the eighth amendment. (This is the essence of the court's long and careful opinion; given our disposition, we can omit details.)

One potential problem with the district court's approach is that 4½ years is a long time for medical personnel to stick with a treatment regimen that does not appear to work. The Constitution does not duplicate the law of medical malpractice or ensure top-notch care, but neither does it allow prisons to bypass available treatments that would solve a prisoner's serious medical problem and stick with drugs or regimens known not to work. See, e.g., *Gonzalez v. Feinerman*, 663 F.3d 311, 314–15 (7th Cir. 2011); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 653–55 (7th Cir. 2005). We call this a "potential" problem, however, because it is not clear on this record that the other approaches Garner favors would do better for him; perhaps the approach taken by the prison's medical staff is normal in the medical profession in light of costs and side effects associated with Garner's proposals, or perhaps the approach he favors would not have worked much better for him than the one the prison adopted.

We are not physicians, nor is the magistrate judge. To resolve a claim such as Garner's—to distinguish among sound but unavailing treatment, malpractice, and deliberate refusal to apply a treatment that would work for the patient—requires focused evidence, not just the sort of general information posted on WebMD or another online resource. Cf. *Jackson v. Pollion*, 733 F.3d 786 (7th Cir. 2013). Normally we would expect the plaintiff in a serious case about medical treatment to offer expert testimony. But Garner is a prisoner, who not only does not have a lawyer but also claims to be mentally ill.

Under these circumstances, the district court should have attempted to recruit a lawyer for Garner, who appears to be unable to present a case dependent on medical evidence—yet has enough of a substantive claim that the court cannot dismiss it as obviously deficient. The criteria of *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc), indicate the value of counsel here. Even though Garner may not have distinctly alerted the court to the reasons why he needed a lawyer, it is possible that with his mental limitations Garner himself may not have understood how valuable counsel could have been in this suit at the summary judgment stage.

One of Garner's appellate arguments is that the district court should have helped him secure counsel. The court understood him to have asked for assistance in obtaining counsel but took the timing of the request as signifying that Garner wanted a lawyer only for trial. Having decided to grant summary judgment, the judge thought it unnecessary to rule on Garner's request, calling it "moot". We suppose that it is possible to understand the request as one limited to trial, but Garner needed counsel sooner, to help compile a record, more than he would have needed counsel later. A judge should take account of a prisoner's (especially a mentally subpar prisoner's) unfamiliarity with the law, and the legal process, before assuming that a plaintiff has abjured the assistance of counsel at what may be the most important stage of the litigation. Garner's request certainly was not "moot"; there is a live controversy between these litigants.

We therefore vacate the judgment and remand this case so that the district court may attempt to find a lawyer willing to represent Garner. The court should allow both sides to secure and present expert medical evidence and then proceed as appropriate under this order and decisions such as *Gonzalez*, *Berry*, and *Greeno*.

VACATED AND REMANDED