In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2427

MAURICE L. WALLACE,

*Plaintiff-Appellant,*

*v.*

JOHN BALDWIN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 17-CV-0576 — **David R. Herndon**, *Judge*.

ARGUED APRIL 25, 2018 — DECIDED JULY 9, 2018

Before MANION, HAMILTON, and BARRETT, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Maurice Wallace was convicted of murder and sentenced to life without parole in 2006. A few months after he entered prison, he assaulted a guard. He has been in solitary confinement (euphemistically called "disciplinary segregation") ever since—for at least eleven years. He is seriously mentally ill. He also poses challenges to both prison officials and federal courts.

Wallace lodged with the district court a proposed com-
plaint against prison officials and the Illinois Department of
Corrections. He alleges that his prolonged isolation exacer-
bates his mental illness, increases his risk of suicide, and vio-
lates his Eighth and Fourteenth Amendment rights. He is un-
able to pay the civil filing fee in advance, so he also filed a
motion for leave to proceed in forma pauperis under 28 U.S.C.
§ 1915. The district court ruled that Wallace cannot proceed in
forma pauperis because he has received three "strikes" under
the Prison Litigation Reform Act for frivolous cases and did
not qualify for the statutory exception for a prisoner who is
"under imminent danger of serious physical injury." See 28
U.S.C. § 1915(g).

Wallace appeals that denial. He was not allowed to pro-
ceed in the district court, and the named defendants have not
appeared in either the district court or on appeal. We re-
cruited counsel for Wallace, and they have represented him
ably. With better-developed arguments and with the benefit
of *Sanders v. Melvin*, 873 F.3d 957 (7th Cir. 2017), decided after
the district court's decision in this case, we conclude that the
district court's reasons for denying in forma pauperis status
were erroneous. Wallace has alleged sufficiently that he faces
imminent danger of serious physical injury. He also has not
yet received three "strikes" under the Prison Litigation Re-
form Act. We vacate the judgment and remand for further
proceedings.

The Prison Litigation Reform Act's "three strikes" provi-
sion limiting prisoners' civil lawsuits in federal courts is at the
center of this appeal:

In no event shall a prisoner bring a civil action or ap-
peal a judgment in a civil action or proceeding under

this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

We review *de novo* a district court's interpretation of the three-strikes provision in § 1915(g). *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003), citing *Evans v. Illinois Dep't of Corrections*, 150 F.3d 810, 811 (7th Cir. 1998). On the imminent-danger exception, factual issues are possible. If a district court digs into them and makes findings, our appellate review adapts accordingly. Our account treats as true all well-pleaded allegations in the complaint and views them in the light most favorable to plaintiff. See *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

The core of Wallace's complaint is that solitary confinement has intensified his mental illness, including post-traumatic stress disorder, causing nightmares, severe anxiety, and most relevant here, suicidal thoughts. He describes his segregation as "akin to being sealed inside a coffin." He spends 23 to 24 hours a day alone in a cell that is "significantly smaller" than 50 square feet. The cell is dark, noisy, infested with insects, freezing in the winter, and hot in the summer. Because of his segregation, he cannot attend educational or religious classes, visit the law library used by the general population, or earn income from a prison job.

This extreme isolation for more than a decade has taken a toll on Wallace's mental health. He takes antidepressants for post-traumatic stress disorder. But despite this medication he still experiences depression, anxiety, panic attacks, difficulty sleeping, and auditory hallucinations.

Central to this appeal, Wallace alleges that prolonged segregation has increased his risk of suicide. He has attempted suicide at least five times, including three times during his eleven years in segregation. His last attempt was in late 2016. The details of that attempt are unclear. During a prior attempt Wallace tied a sheet around his neck and "threatened to jump." Taking Wallace's threats seriously, prison staff have often placed him on special observation as a precaution against self-harm.

Over the years, Wallace alleges, he has submitted "several hundred written requests" to be told when his segregation will end. Prison staff either ignore those requests or summarily deny them. His most recent request was denied without explanation in January 2017.

A few months after the most recent denial, Wallace tried to file this suit against the Department and prison officials under 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights. He alleged in his pro se complaint that the officials were deliberately indifferent to the effects of his prolonged isolation, including his increased risk of suicide.

Wallace submitted with his complaint an application to proceed in forma pauperis. He reported that he had incurred three "strikes" under the PLRA for filing actions in federal

court that were dismissed as frivolous, malicious, or for failure to state a claim. But he argued that the district court should allow him to proceed without prepayment of the full filing fee because he faces "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

The district court denied Wallace leave to proceed in forma pauperis and ordered him to pay the full filing fee before the case could proceed. *Wallace v. Baldwin*, No. 17-cv-0576-DRH, 2017 WL 2865317 (S.D. Ill. July 5, 2017). The court's order listed three previous cases in which district judges had assessed Wallace strikes. The court then ruled that Wallace's periodic suicidal ideation did not place him in "imminent danger" because his complaint did not "allege that he is currently considering suicide," and because "a prisoner cannot create the imminent danger required by § 1915(g)," citing *Widmer v. Butler*, No. 14-cv-874-NJR, 2014 WL 3932519 (S.D. Ill. Aug. 12, 2014), and other district court decisions. Wallace, 2017 WL 2865317, at *2. Wallace did not pay the filing fee but instead filed this appeal, also seeking to proceed in forma pauperis.

We first address the issue presented to the district court, which is whether his allegations satisfy the imminent-danger exception to § 1915(g). To be clear, we respectfully disagree with the district court's general rule that a prisoner cannot create the imminent danger needed to satisfy the exception. We recognize the common-sense appeal of that general rule, at least to the extent it is based on truly voluntary actions by the prisoner. In the case, however, of someone suffering from mental illness that inclines him toward self-harm—a condition that is unfortunately common in American prisons—that

general rule sweeps too broadly. It does not account for genuine dangers beyond the conscious control of these prisoners.

Wallace cites scholarly studies finding a link between prolonged solitary confinement and an increased risk of self-harm. See, e.g., Fatos Kaba, et al., *Solitary Confinement and Risk of Self-Harm Among Jail Inmates*, 104 Am. J. of Pub. Health 442 (2014); Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash U. J. L. & Pol'y 325 (2006). Two professors of psychiatric medicine tell us in an amicus brief that these studies align with the "scientific consensus … that prisoners held in solitary confinement experience serious, often debilitating—even irreparable—mental and physical harms," including an increased risk of suicide. See also *Davis v. Ayala*, 135 S. Ct. 2187, 2208–10 (2015) (Kennedy, J., concurring) (noting need for courts to pay closer attention to research on harmful mental-health effects of solitary confinement); *Glossip v. Gross*, 135 S. Ct. 2726, 2765–66 (2015) (Breyer, J., dissenting) (reviewing research on harmful mental-health effects of solitary confinement, noting that the United Nations Special Rapporteur on Torture has called for a global ban on solitary confinement for longer than 15 days, and noting that many defendants waiting for death penalty in solitary confinement "volunteer to be executed, abandoning further appeals").

With the help of his appellate counsel and the amici, Wallace argues broadly that prolonged solitary confinement "makes self-harm imminent" for all prisoners, regardless of their individual circumstances. They argue, in effect, that any challenge to solitary confinement based on a claimed risk of self-harm could satisfy the imminent-danger exception of § 1915(g). We can decide this case without going so far. Lim-

iting our decision to the facts before us, we conclude that Wallace made a sufficient showing that he faced imminent danger.

Wallace's situation is indistinguishable from that of the mentally-ill prisoner in *Sanders v. Melvin*, 873 F.3d 957 (7th Cir. 2017). Sanders had spent eight years in solitary confinement and had a history of self-harm when he filed suit. *Id.* at 959–60. He alleged that his mental illness and prolonged segregation predisposed him to self-harm. We concluded that Sanders's allegations satisfied the imminent-danger exception to the three-strikes rule. *Id.* at 960.

Similarly, Wallace has spent eleven years in solitary confinement, suffers from serious mental illness, and he has a history of attempting to harm himself. He raises a genuine concern that the negative psychological effects of his segregation will drive him to self-harm. So Wallace has plausibly alleged that his continued segregation places him in imminent danger of serious bodily injury. See *id.*; see also *In re Medley*, 134 U.S. 160, 168 (1890); *Davis*, 135 S. Ct. at 2210 (Kennedy, J., concurring).

For the sake of completeness, we also elect to address a second issue. Wallace himself did not raise it, having taken at their word federal judges' assessments of strikes. His appellate counsel have recognized and explained the problem. Wallace would be entitled to proceed in forma pauperis even if he were not in imminent danger. Upon closer examination, it is clear that only two of his purported "strikes" were properly assessed. The third strike was a case in which a judge assessed Wallace a strike after denying his motion to intervene in another prisoner's lawsuit. The assessment of that strike was a legal error.

"[A] later district court may not defer to an earlier district court's contemporaneous decision to label a dismissal as a strike." *Fourstar v. Garden City Grp., Inc.*, 875 F.3d 1147, 1153 (D.C. Cir. 2017). We agree with Wallace that moving to intervene under Federal Rule of Civil Procedure 24 does not qualify for a strike. Section 1915(g) is phrased to apply only to bringing a civil action or appealing a civil judgment: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section" if the prisoner has accumulated three strikes, says the statute. Filing a motion to intervene does not amount to bringing a civil action. Also, a district judge may deny intervention without finding that the complaint in intervention is "frivolous, malicious, or fails to state a claim." See § 1915(g); Fed. R. Civ. P. 24(b). We see no basis to stretch the text of § 1915(g) to address the hypothetical prisoner who seeks to exploit intervention as a means of avoiding the three-strikes rule. In such cases, which should be rare, the judge would still have many additional tools to deal with misuse of litigation procedures.

Accordingly, we VACATE the district court's order denying Wallace's motion for leave to proceed in forma pauperis and REMAND this action for further proceedings consistent with this opinion.